STATE OF MINNESOTA *vs.* EDWARD J. TEIPNER.

May 6, 1887.

Rape—Evidence—Medical Examination.—Upon trial of an indictment for rape, the prosecution may show the results of a medical and surgical examination of the person of the prosecutrix, made 12 days after the alleged commission of the offence.

Witness—Expert—Refusal to Answer, because not paid as Expert.— A physician and surgeon upon the stand as a witness cannot properly refuse to answer a question upon the ground that his answer will be expert evidence, and that he has not been summoned or paid as an expert witness.

Same—Statutory Allowance of Fees, when to be made.—The provision of the statute (Gen. St. 1878, c. 70, § 8) which allows a judge to allow to an expert witness "such fees or compensation as, in his judgment, may be just and reasonable," has reference to an allowance to be made *after* the witness has been summoned and dismissed without being sworn or examined, or *after* he has been sworn and examined, and not before.

Defendant was tried in the district court for Hennepin county before *Koon, J.,* and a jury, on an indictment for rape, was convicted and sentenced to ten years' imprisonment at hard labor, from which judgment he appeals.

*Sumner Ladd,* for appellant.

*Moses E. Clapp,* Attorney General, and *F. F. Davis,* for the State.

BERRY, J. 1. Defendant was indicted for rape. Evidence upon

the trial tended to show that the crime was committed as charged upon the evening of November 7, 1885. A physician and surgeon, sworn for the prosecution, stated that she knew the prosecutrix, a girl about 16 years of age, and that she first saw her about noon of November 19th.

She was then asked—*First*, if she made an examination of her person at that time; and, *second*, in what condition she found her private parts. Both questions were objected to by defendant on account of the remoteness of the time of examination from the date of the rape. But the questions were properly allowed. There is no presumption of law or fact that the lapse of time (between 11 and 12 days) was so great that an examination would not disclose marks of violence or other physical appearances resulting from the rape, if one there was. Neither is there any presumption, in the absence of evidence to raise one, that marks or appearances such as might result from the force or violence employed in accomplishing a rape were the effect of any fresh cause intervening the alleged rape and the examination. Whether they were or not was a question of fact. In a case of this kind, an examination is often of the first importance. Here the prosecutrix gave the only direct testimony as to the commission of the crime, and the results of the examination clearly tended to her corroboration. It was, of course, entirely competent for the defendant (as he did) to sift the testimony of the witness who made the examination, and to keep it within proper limits, as well as to contradict or rebut it. As respects the matter of the *time* when an examination is made, a moment's reflection will show that there is no analogy between a case like this at bar and one like *State* v. *Shettleworth*, 18 Minn. 191, (208,) cited by defendant, where it is required that the *complaints* of a party seduced or violated must be recent, or that delay in making the same must be explained, to entitle them to be considered in evidence. Obviously, the latter case involves an entirely different principle.

2. Testimony having been received on the trial tending to show that the prosecutrix slept soundly after and on the night of the alleged rape, and that she did her work as a house servant the next day, one Moore, a physician and surgeon, was called as a witness by the de-

fendant, and asked this question : "Wouldn't it be impossible for this prosecutrix, after having been raped the night previous, to sleep soundly and do her work the next day?" The witness refused to answer on the ground that he had not been subpœnaed as an expert. His refusal was sustained by the court, and defendant then moved that he be allowed the fees of an expert, on the ground that he was a necessary witness, and defendant unable to pay the fees, and the motion was denied.

Though there have been contrary rulings in other jurisdictions, (see Lawson, Exp. Ev. 257 *et seq.*,) in this state no witness can refuse to answer a question on the ground that his answer will be what is known as expert evidence; and this, whether he has been summoned or paid as an expert witness or not. This subject is well treated in *Ex parte Dement*, 53 Ala. 389, and we refer to that case as fully and clearly presenting the reasons for what we hold to be the rule in this state. The provisions of our statute (Gen. St. 1878, *c.* 70, § 8) which authorize a judge to allow to an expert witness "such fees or compensation as may be just and reasonable," have reference to an allowance to be made after the witness has been summoned and dismissed without being sworn and examined, or after he has been sworn and examined, and not before. The refusal of the witness to answer on the ground mentioned was therefore not justifiable.

But the refusal deprived the defendant of nothing to which he was legally entitled. The question was not a proper one, and he had no legal right to its answer. It could not be answered intelligently, except upon the basis that the witness was informed hypothetically or otherwise of the facts and circumstances of the alleged rape, and, to some extent, of the physical, mental, and moral *status* of the prosecutrix at the time of its commission. No such basis is found here. So far as appears, the witness never saw or heard of the prosecutrix until he took the stand, and knew nothing of her, or of the circumstances of the alleged outrage. The witness was not, therefore, in a position to answer the question as an expert, and it was not proper to be addressed to him, or to any other witness, except as an expert. It follows that the trial court committed no legal error in sustaining the refusal to answer.

3. The assignment of error in the charge is supported by no exception. But, if it were, we are satisfied, upon the perusal of the whole charge, that it is not well founded.

4. As the record does not show any motion for a new trial, and the defendant's brief states that none was made, we are not, strictly speaking, called upon to consider the last assignment of error, viz., that the verdict is not sustained by the evidence. But we have nevertheless carefully gone over the settled case; and while the testimony of the prosecutrix, upon which the verdict mainly rests, is flatly contradicted by the testimony for the defence, we are satisfied that, upon the whole evidence, the verdict should not be disturbed. And, in coming to this conclusion, we lay great stress upon the fact that the prosecutrix, on the one hand, and the defendant, with his wife and other witnesses, on the other, testified in the presence of the jury and of each other, and that in a case like this the credit and weight to which testimony is entitled in a *very great* degree depends upon the demeanor and appearance of witnesses when upon the stand.

Judgment affirmed.